**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Anthony F. Fabec, | ) | CASE NO. 1:04 CV 2062 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| STERIS Corporation, | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendant. | ) | |

**Introduction**

This matter is before the Court upon defendant's Motion for Summary Judgment (Doc. 20). This is an age discrimination in employment case. For the following reasons, the motion is GRANTED.

**Facts**

Plaintiff, Anthony F. Fabec, filed this Complaint in the Lake County Court of Common Pleas against defendant, STERIS Corporation. The matter was thereafter removed to this Court on the basis of federal question jurisdiction.

1

Plaintiff commenced his employment with defendant in July 2001 at its Hopkins Road plant in Mentor, Ohio.  The plant produces a chemical sterilant for a STERIS sterilizer used in hospitals and for other medical purposes.  At the time of his hire, plaintiff was 59 years old.  Plaintiff was hired as a Chemical Packaging Supervisor assigned to a second shift position which hours were 2:30 p.m. to 11:00 p.m.  At the time of his hire, there were two other Chemical Packaging Supervisors working on the first shift, Dennis Hayes and Ron McLain.  Plaintiff's position as the third Chemical Packaging Supervisor was newly created.  As second shift Chemical Packaging Supervisor, plaintiff supervised three operations which produced the chemical sterilant- blending, acid packaging and packaging line.  (pltf. depo. 36-37, 39-41, 49; Ex. 2).

Plaintiff's annual reviews for the first two years of his employment received overall ratings of "achieves" on a scale which included "consistently exceeds," "exceeds," "achieves," "below," and "consistently below."[1]  (Doc. 21 Exs. 3 and 4).

In August or September 2003, Mike Jusek, the Chemical Packaging Manager and plaintiff's immediate supervisor, was approached by Connie Wargo, the second shift Team Leader, who told Jusek that plaintiff was different after Jusek left.  Jusek worked first shift and generally left at 5:30 p.m.  After they talked "for a little bit," Jusek advised Wargo to speak with Diane Kaufman, the Manager of Human Resources.  (Jusek depo. 26-29; Jusek first aff.).

Kaufman met with Wargo and five other second shift employees in early September 2003 to discuss the employees' concerns regarding plaintiff, their supervisor. Issues raised at

---

[1]  The 2003 performance review omitted this lowest category.

this meeting included: (1) Plaintiff was forgetful.  He forgot that one employee called off work and did not know that another was part of his staff.  (2) Plaintiff demonstrated favoritism toward an employee, Angel, providing her with special treatment and "too many chances when she arrives late."  (3) Plaintiff was not fair in performance reviews and relied on Wargo, a non-supervisory employee, for input.  (4) Plaintiff was "always watching and standing by work areas as if [the employees] were children." (5) Plaintiff shortened the break period by four minutes.  (6) Plaintiff did not wear safety gloves when handling the product, but reprimanded the employees for failing to do so.  (7) Plaintiff permitted Angel's husband (a non-employee) on STERIS property.  Kaufman met with plaintiff and his supervisor, Mike Jusek, to discuss these issues and sent an e-mail to plaintiff and Jusek setting forth the issues discussed at the meeting.  (Kaufman depo. 29-42; Doc. 21 Ex. 7).

      Jusek's handwritten notes, from October 2003 through March 2004, recorded issues that arose involving plaintiff which Jusek gleaned from other employees, through his own observation and through other supervisors.  For example, the October/November 2003 notes indicate that the second shift employees felt that plaintiff had "one-way communication (his way)," they could not question plaintiff's decisions, they were not taken seriously and they were not respected.  The December 2003 notes indicate that the employees felt that plaintiff was forgetful and had a "temper issue."  Jusek noted that when questioned or confronted, plaintiff would initially deny a problem but then "own up" to it.  One instance is cited wherein plaintiff's "credibility [was] in question" after he failed to inform Jusek about a pallet lifter problem when, in fact, plaintiff told Mark Anderson (the Director of Operations and Jusek's supervisor) that he had informed Jusek.  (Jusek depo. 60-61, 64, 68; Doc. 21 Ex. 8).  Plaintiff

3

admitted at deposition that he made a "false and misleading" statement to Anderson in this regard. (pltf. depo. 118).

In December 2003, Diane Kaufman and Mark Anderson held one of their semi-annual small group meetings with employees regarding supervisory treatment. (Kaufman depo. 52-53, 60-67; Doc. 21 Exs. 10 and 11). Questions asked regarding plaintiff's performance and answers given by the second shift employees are as follow:

1. What kind of objectives and constructive feedback either verbally or written are given to you by your supervisor?

A. Most all coaching/communication is through Connie. Teams says that Tony[2] spends less than 1 hr/shift on the floor. Very seldom in the acid room. A couple employees said that it's been weeks since Tony has talked to them.

2. Are your ideas considered in the decision making process?

A. Very seldom.

3. Is positive and negative feedback now being provided in a more constructive and appropriate manner?

A. Not around to give feedback.

4. Do conversations remain calm if there are disagreements?

A. No.

5. Is adequate time given to clear up misunderstandings?

A. Most often you're told to "just do it."

6. Are reasons given behind decisions that are made?

A. Very seldom.

7. Are performance issues based on fact or personal bias?

---

[2] "Tony" refers to plaintiff, Anthony Fabec.

4

A. Team was split.³

8. Is there improved mutual respect between you and your supervisor?

A. Tony is perceived as attempting to improve relationships.  However, some employees felt the issues are likely too deep to repair.

9. Are conversations friendly and open or rigid and inflexible?

A. Depends on the situation.

10. Does your supervisor consider you to be a valued employee?

A. Team was split.

11. What are the positive changes you noticed?

A. Tony's making some attempts to improve relationships.

12. Overall, is your working relationship better with your supervisor?

A. No.

(*Id.*).

On March 17, 2004, Mike Jusek put plaintiff on a Performance Improvement Plan which indicates, "Over the past 12 months, your contributions to the Hopkins facility have been significantly below expectations.  During this period, your work performance and progress has been unacceptable."  Mark Anderson suggested and approved of the Performance Improvement Plan.  Specific examples are cited and deficiencies are noted with a plan proposed on how to improve deficiencies.  The March 17 Performance Improvement Plan was updated.  (Jusek depo. 132-133, 161; Doc. 21 Exs. 11, 12 and 13).  At some point, plaintiff approached Jusek and sought weekly scheduled meetings in an effort to improve his performance.  Jusek declined to schedule weekly formal meetings because he believed that

---

³   Kaufman testified that there was no consensus on this answer.

informal discussions as the need arose would better accomplish the problem. (Jusek depo. 159-161).

Another Performance Improvement Plan, dated March 29, 2004, states, "Over the last 12 months, several issues and incidents have come up that raise significant concern over your ability to manage the second shift chemical team." Again, specific examples are cited, and deficiencies notes and a plan to improve performance are stated. It is noted that plaintiffs' employees indicated his resistance to listening to their ideas, plaintiff made poor decisions that hurt morale and implemented an attendance policy for the second shift which deviated from corporate policy. It is further noted that plaintiff had interpersonal issues with his employees and multiple meetings were necessary to resolve certain issues. It is again noted that plaintiff's "presence on the floor is minimal." (Doc. 21 Ex. 13)

In May 2004, Diane Kaufman and Mark Anderson held another small group department meeting with the second shift employees. Notes from the meeting state,

- No coaching, focus only on production
- No communication and miscommunication
- Ignores employees comments and suggestions
- Angry about open door... retribution exists
- Very moody, quick to anger, "get out of my way"
- Tells employees and maintenance techs what to do without knowing the equipment
- Deals with problem issues as a group- - even if problem existed with only one individual
- Employees feel disrespected

- Positive and pleasant (on a scale of 1 to 10) Tony began as a 1 and is not a 3
- Stands at door during break watching

(Kaufman depo. 68-81; Doc. 21 Ex. 15).

On July 6, 2004, plaintiff received his annual evaluation. (Doc. 21 Ex. 16). While plaintiff was rated mostly "achieves" on his production scores, he was rated "below" in adaptability, communication, decision making, initiative, leadership/mentoring and teamwork. Plaintiff received an overall rating of "2"- "below." (*Id.*).

In July 2004, Mike Jusek prepared a document summarizing complaints he received from employees concerning plaintiff. Jusek reviewed the document prior to plaintiff's termination. (Jusek aff. and Ex.). The document notes that two employees stated that the rotation of assignments was unfair; one employee was habitually late from breaks and lunch and was viewed as "protected" by plaintiff; plaintiff approached two individuals to ascertain confidential information discussed at the feedback meeting; women complained that plaintiff placed his hand on their shoulder or back, or asked for their hand in leading them to his office; an employee who had been absent confirmed the consequences of his action with plaintiff in a telephone message and yet plaintiff raised his voice to him and pointed his finger at him about the issue. (*Id.* ).

Plaintiff was terminated effective July 21, 2004. Jusek and Anderson made the decision to terminate plaintiff. (Jusek depo. 158). In a letter notifying plaintiff, he was informed that the reason for his termination included "without limitation, failure to improve on your below performance and not meeting objectives set forth in your Performance Improvement Plan." (Doc. 21 Ex. 20). Plaintiff was 62 at the time of his termination.

Plaintiff thereafter filed this Complaint setting forth five causes of action all arising out of his termination from employment. Count One alleges wrongful discharge. Count Two alleges breach of contract. Count Three alleges age discrimination in violation of Ohio and federal law. Count Four alleges hostile work environment. Count Five alleges intentional infliction of emotional distress.

This matter is now before the Court upon defendant's Motion for Summary Judgment.

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. Federal Rule of Civil Procedure 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the

>>mere allegations or denials of [his] pleadings, but [his response], by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is genuine issue for trial.  If he does not respond, summary judgment, if appropriate, shall be entered against him.

The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party.  *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th Cir. 1985).  However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury."  *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)).  Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citation omitted).

### Discussion

**(1) age discrimination**

Count Three alleges age discrimination in violation of Ohio and federal law. Defendant asserts that Count One (wrongful discharge) and Count Two (breach of contract) are actually age discrimination claims as well.  Plaintiff does not dispute this assertion and,

therefore, Counts One, Two and Three will be addressed as claims for age discrimination.

The burden-shifting evidentiary framework originally articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-05, 93 S.Ct. 1817, 1824-26, 36 L.Ed.2d 668 (1973) and later refined in *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 256-59, 101 S.Ct. 1089, 1095-97, 67 L.Ed.2d 207 (1981) is utilized in analyzing a claim of age discrimination under the ADEA. Accordingly, to establish a prima facie case in the absence of direct evidence, a plaintiff must demonstrate that: "(1) he was at least 40 years old at the time of the alleged discrimination; (2) he was subjected to an adverse employment action; (3) he was otherwise qualified for the position; and (4) after he was rejected, a substantially younger applicant was selected." *Burzynski v. Cohen*, 264 F.3d 611, 621-622 (6th Cir. 2001) (citing *Barnett v. Dep't of Veterans Affairs*, 153 F.3d 338, 341 (6th Cir.1998)). With regard to the fourth element, plaintiff can also demonstrate that he was replaced by a person outside of the protected class or, in a disparate treatment case, that he was treated differently than similarly-situated individuals. *Policastro v. Northwest Airlines, Inc.,* 297 F.3d 535 (6th Cir. 2002). As to this final element, the United States Supreme Court has held that plaintiff's replacement does not have to be under 40 (i.e. outside the protected class) but must be substantially younger. *O'Connor v. Consolidated Coin Caterers Corporation*, 517 U.S. 308, 312 (1996). The Sixth Circuit has held that "in the absence of direct evidence that the employer considered age to be significant, an age difference of six years or less ... is not significant." *Walcott v. City of Cleveland*, 123 Fed.Appx. 171, 178 (6th Cir. 2005) (citing *Grosjean v. First Energy Corp*., 349 F.3d 332, 340 (6th Cir.2003) ).

If a prima facie case is established, the burden of production shifts to the defendant to

articulate a non-discriminatory reason for its action.  If the defendant states such a reason, "the plaintiff must then demonstrate by a preponderance of the evidence that the defendant's proffered reason was a pretext for age discrimination."  *Burzynski,* 264 F.3d at 621-622.  In order to demonstrate pretext, "plaintiff must produce sufficient evidence from which the jury could 'reasonably reject the defendant's explanation' and infer that [defendant] 'intentionally discriminated' against him." *Leonard*, 6 Fed.Appx. at 228 (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 519, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) ).  As recognized by the Sixth Circuit, "[t]he Supreme Court recently held that a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* (quoting *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105 (2000) ).  Finally, *Manzer, supra*, reiterated that pretext may be proven by setting forth evidence "(1) that defendant's proffered reasons have no basis in fact, (2) that the proffered reasons did not actually motivate the discharge, or (3) that they were insufficient to motivate discharge." *Id.* (citing *Manzer,* 29 F.3d at 1084).

The Court applies the same burden-shifting analysis to plaintiff's age discrimination claims filed pursuant to Ohio law.  *Campbell v. International Paper Co.*, 138 Fed.Appx. 794, 796 (6th Cir. 2005) (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 357-58 (6th Cir.1998).) ("The same test applies to both the plaintiffs' ADEA and their Ohio age-discrimination claims. We therefore need not address these claims separately as the elements and burden of proof remain the same." )

Defendant argues that plaintiff's claims fail because he cannot satisfy his prima facie

11

burden through the four-part method.  Plaintiff asserts that he need not do so because he has direct evidence of age discrimination.

**(a) direct evidence**

Plaintiff submits the affidavit of James Burger who avers the following.  He was an employee of defendant until his termination in March 2003.  Shortly after Mark Anderson became Director of Operations in late 2002 or early 2003, he commented to a group of managers at a project engineering meeting that "I need to get rid of the old people." Sometime after this meeting, Anderson commented to Burger in Burger's office that  "I need to get rid of the old people."  (Burger aff.).  Additionally, plaintiff submits a list of former salaried employees terminated under the direction of Anderson in 2003 and 2004 who were put on a Performance Improvement Plan and then terminated.  All were 40 years old or older. (Doc. 22 Exs. 3 and 4).

The Sixth Circuit has stated,

> A 'direct evidence' discrimination case requires proof which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.  Consistent with this definition, direct evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group.

*Harris v. Giant Eagle Inc.*, 133 Fed.Appx. 288, 293 (6th Cir. 2005) (citations omitted).

In *Peters v. Lincoln Electric Co.,* 285 F.3d 456, 477-478 (6th Cir. 2002) (citing *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325 (6th Cir.1994) ), the Sixth Circuit recognized four factors to be evaluated in considering allegedly age-biased remarks:

> (1) whether the statements were made by a decision maker or by an agent within the scope of his employment; (2) whether the statements were related to the

decision-making process; (3) whether the statements were more than merely vague, ambiguous, or isolated remarks; and (4) whether they were made proximate in time to the act of termination.

Upon consideration of these four factors, plaintiff's evidence does not constitute direct evidence. Anderson was a decision maker. However, there is no evidence that the two statements were related to the decision making process. Burger testified that he assumed that the comments related to getting rid of old engineers. (Burger depo. 47, 58-59). Plaintiff worked in manufacturing. Burger further testified,

> Q. And you have no personal knowledge concerning the statements you say Mr. Anderson made to Mr. Fabec's termination?
>
> A. No. I know nothing about that.

(*Id.* at 104).

Furthermore, while Anderson was a decision maker in plaintiff's termination, Jusek was also involved in the decision. Jusek maintained handwritten notes documenting plaintiff's performance failures and prepared a summary document regarding plaintiff's employees' complaints. He also prepared the performance reviews.

Nor can Anderson's two statements be considered more than isolated remarks which were too remote in time to plaintiff's termination to be relevant. Burger testified that Anderson made the statements between November 2002 and January 2003. (*Id.* at 36, 57; Burger aff.) Plaintiff was terminated in July 2004- approximately one and one-half years later. In *Rosso v. A.I. Root Co.*, 97 Fed.Appx. 517, 520 (6th Cir. 2004), the court found remarks to be too isolated and ambiguous to constitute direct evidence where the plaintiff was employed for six and one-half months after comments were made before he was discharged.

13

That court also referred to *Wilson v. Reliance Trading Corp. of Am.*, 2000 WL 282357 at * 1 (6th Cir. Mar. 6, 2000) (A manager's two comments made approximately one year and six months before plaintiff's discharge were too isolated to give rise to an inference of discrimination.) and *Kahl v. The Mueller Co.*, 1999 WL 196556 (6th Cir. Apr. 1, 1999) (An alleged age-related comment made by a supervisor eight months before plaintiff's termination was deemed a 'stray remark' temporally distant from termination and insufficient to give rise to an inference of discrimination.)  Under this precedent, Anderson's two comments are too remote in time to be considered direct evidence.

Additionally, defendant points out that Anderson signed and approved plaintiff's June 2003 annual review wherein plaintiff received a satisfactory rating.  (Anderson aff.; Doc. 21 Ex. 4).  This occurred six months after the statements were made.  Furthermore, as discussed above, documentation shows that employee complaints began to emerge in the fall of 2003 which ultimately led to plaintiff's discharge.

Finally, plaintiff only identifies individuals terminated by Anderson after being placed on a Performance Improvement Plan.  However, evidence shows that Anderson hired older individuals. Anderson avers that while he terminated Burger, who was 54 at the time, he replaced him with an individual who was 62.  (Anderson aff.).  Anderson further avers that out of 25 employees that he hired during 2003, he hired six employees over the age of 40, five more over the age of 50 and one over the age of 60.

Because plaintiff fails to provide direct evidence, he must satisfy his prima facie burden through the circumstantial method.

**(b) whether plaintiff was replaced**

Defendant asserts that plaintiff is unable to establish a prima facie case because he was not replaced. Defendant points to evidence that plaintiff's second shift duties were transferred to Ron McLain, previously a first shift Chemical Packaging Supervisor. Dennis Hayes remained the sole first shift Chemical Packaging Supervisor. (Anderson depo. at 103). McLain and Hayes each had more seniority than plaintiff and superior work evaluations at the time of plaintiff's termination. (Jusek first aff.).

Plaintiff argues that he was replaced by McLain, an individual substantially younger than plaintiff. McLain was 49 at the relevant time. (Doc. 22 Ex. 19).

The Sixth Circuit has recognized,

> As this court has made clear, a plaintiff has not been replaced when another employee is assigned to perform the plaintiff's duties in addition to his or her own, when the plaintiff's duties are spread among existing employees doing related work.

*McElroy v. Philips Medical Systems North America, Inc.,* 127 Fed. Appx. 161 (6th Cir. 2005) (citing *Grosjean v. First Energy Corp.,* 349 F.3d 332 (6th Cir. 2003) ).

Plaintiff asserts that he was not replaced because McLain assumed all of plaintiff's duties rather than assuming plaintiff's duties in addition to his own. Nor, plaintiff asserts, were his duties spread among existing employees doing related work. Plaintiff does not reference evidence in support of these statements. For the following reasons, the Court finds that plaintiff was not replaced.

Defendant submits the affidavit of Mike Jusek, wherein he avers the following. Jusek supervised plaintiff, McLain and Hayes. While plaintiff worked for defendant, he was responsible for running a packaging line and for supervising the acid fill-in seal operation and the blending operation. He performed these tasks from 2:30 p.m. to midnight four days a

week and from 2:30 p.m. to 6:30 p.m. on a fifth day.  At that time, McLain ran the packaging line from 6:00 a.m. to 2:30 p.m.  Hayes supervised the acid fill-in seal operation, the blending operation and the Vaprox operation from 6:00 a.m. to 2:30 p.m.  After plaintiff left, McLain and Hayes absorbed all the functions of the department while continuing to perform the duties they previously performed.  McLain worked the hours plaintiff previously worked and continued to run the packaging line and absorbed plaintiff's duties of supervising the acid fill-in seal operation and blending operation.  Hayes continued to perform his previous functions during the same hours and also assumed the additional responsibility of running the packaging line.  (Jusek second aff.)  This uncontroverted evidence shows that plaintiff was not replaced.

For this reason, plaintiff fails to establish a prima facie case and, therefore, summary judgment is warranted on his age discrimination claims.  Assuming he has satisfied this portion of his burden, he fails to show pretext.

**(c) pretext**

Defendant has asserted a legitimate, non-discriminatory reason for plaintiff's termination, i.e., his poor performance as a supervisor.  Plaintiff fails to show that this was a pretext for age discrimination.

First, plaintiff argues that defendant was motivated by discriminatory animus towards plaintiff as evidenced by the fact that plaintiff had received satisfactory performance reviews until Mark Anderson became the Director of Operations in 2002 and until Anderson stated, "I need to get rid of the old people." However, plaintiff had received one satisfactory annual review on August 6, 2002- signed and approved by Mike Jusek and Anderson's predecessor. (Doc. 22 Ex. 13).  Plaintiff received his second satisfactory annual review on June 20, 2003-

16

signed and approved by Mike Jusek and Anderson. (Doc. 22 Ex. 14). The latter occurred well after Anderson assumed the Director of Operations position and six months after Anderson's statement. It was not until plaintiff's July 6, 2004 annual review- signed and approved by Mike Jusek and Anderson- that plaintiff received an unsatisfactory rating. (Doc. 21 Ex. 16). This review follows well-documented evidence that plaintiff's performance was not satisfactory.

Second, plaintiff points to a June 17, 2004 e-mail message from Anderson to a superior which plaintiff characterizes as "marking" him for termination, along with two other employees over the age of 40, before any decision was made to fire him for performance. (Doc. 22 Ex. 11). Plaintiff infers that this shows that he was terminated because of his age and not his performance. However, the e-mail is clearly not self-explanatory and Anderson testified that the e-mail merely shows that plaintiff was considered for possible elimination of his position. (Anderson depo. 82-83). More importantly, the evidence demonstrating that plaintiff's performance was deficient since the fall of 2003 is well-documented.

For these reasons, plaintiff fails to show pretext and summary judgment is granted on the age discrimination claims (Counts One, Two and Three).

**(2) hostile work environment**

Count Four alleges hostile work environment.

A hostile work environment claim may be stated under the ADEA. Plaintiff must show that he is in the protected class, was subjected to harassment based on age, the harassment had the effect of unreasonably interfering with his work performance and creating an objectively intimidating, hostile, or offensive work environment. *Crawford v. Medina*

*General Hosp.*, 96 F.3d 830, 834 (6th Cir. 1996).

In determining whether there was a hostile or abusive work environment, the court looks to the totality of the circumstances. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88, (1998). In particular, the court considers "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23,(1993)).

Accordingly, harassment must be "sufficiently severe or pervasive to alter the conditions of the victim's employment to create an abusive working environment." *Broska v. Henderson,* 70 Fed. App. 262 (6th Cir. June 30, 2003) (citing *Harris,* 510 U.S. at 21). Moreover, the test "has both an objective and subjective component: the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as hostile or abusive." *Id.*

Finally, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, *supra*.

Plaintiff presents one paragraph in support of his argument that he experienced a hostile work environment based on his age:

> Plaintiff clearly experienced a hostile work environment at STERIS. Director Mark Anderson made it extremely difficult for plaintiff to perform his job at STERIS. In addition to Director Mark Anderson's campaign to 'get rid of all the old people,' plaintiff was put on a performance improvement plan with constantly changing objectives and time periods in which to accomplish the goals. Such an environment

made it nearly impossible for plaintiff to perform his functions.

(Doc. 22 at 10). This assertion fails to satisfy the law set forth above. Plaintiff does not present evidence that the Performance Improvement Plan was objectively and subjectively severe or pervasive. Additionally, as discussed above, plaintiff has not demonstrated that his termination was a result of Mark Anderson's bias rather than his own poor performance.

Summary judgment is warranted on this claim.

### (3) intentional infliction of emotional distress

Count Five alleges intentional infliction of emotional distress. Plaintiff asserts that this claim is premised on his unlawful termination. For the reason that this Court has not determined the termination to be unlawful, this claim fails.

### Conclusion

For the foregoing reasons, defendant's Motion for Summary Judgment is granted.

IT IS SO ORDERED.


/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge


Dated: 9/21/05